**Exhibit 4**

```
 1  Charles J. Harder (CA Bar No. 184593)
    Dilan A. Esper (CA Bar No. 178293 )
 2  Jordan Susman (CA Bar No. 246116)
    HARDER LLP
 3  132 S. Rodeo Drive, Fourth Floor
    Beverly Hills, California 90067
 4  Telephone: (424) 203-1600
    E-mail: CHarder@harderllp.com
 5  DEsper@harderllp.com
    JSusman@harderllp.com
 6
    Attorneys for Claimant
 7  Scottsdale Capital Advisors Corp.
```

FINANCIAL INDUSTRY REGULATORY AUTHORITY

SCOTTSDALE CAPITAL ADVISORS CORP., an Arizona corporation,

Claimant,

v.

ERIC MILLER, an individual,

Respondent.

Case no. 17-01765

**CLAIMANT SCOTTSDALE CAPITAL ADVISORS CORP.'S MOTION TO ISSUE SUBPOENA TO FINRA TO APPEAR AS WITNESS AND PRODUCE DOCUMENTS AT ARBITRATION**

Arbitration Trial: May 7, 2018

Claimant SCOTTSDALE CAPITAL ADVISORS CORP. ("SCA") hereby requests that the Arbitrators in this matter issue a subpoena to non-party the Financial Industry Regulatory Authority ("FINRA").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The arbitration panel previously issued a subpoena to FINRA to produce documents and appear for deposition (the "**Deposition Subpoena**") prior to the arbitration hearing in this matter. FINRA, however, objected to the Deposition Subpoena and has thus far refused to produce responsive documents or attend its duly noticed deposition. In the event the Arbitrators do not compel FINRA's compliance with the Deposition Subpoena, they should issue a new subpoena to FINRA to attend the arbitration. *Based upon case law cited by FINRA*, the arbitration panel is empowered to compel FINRA to produce documents and appear as a witness at the hearing.

The only way for SCA to fairly arbitrate its claims is to obtain documents and testimony from FINRA. Therefore, if the Arbitrators do not compel FINRA to comply with the Deposition Subpoena, the Arbitrators should issue a new subpoena, compelling FINRA's attendance at the arbitration.

### II.

### STATEMENT OF RELEVANT FACTS

This arbitration concerns respondent Eric Miller's ("**Miller**") breach of written non-disclosure agreements with SCA, and illegal disclosure of confidential information and trade secrets to third parties.

In response to the allegations in SCA's Statement of Claim, Miller alleges that he was merely acting as a whistleblower. Answer ¶ 4.

Miller's whistleblower defense, however, is contradicted by the allegations in SCA's Statement of Claim, which states:

-2-

> Miller contacted FINRA for the express purpose of destroying
> SCA. [¶] Miller encouraged FINRA to harass and intimidate SCA,
> and advised FINRA on ways to do it, such as suggesting that
> FINRA review the text messages of SCA's employees and telling
> FINRA that it should promptly press forward with regulatory
> proceedings against SCA. In addition, Miller encouraged FINRA
> to block a pending acquisition of another broker dealer named
> Wilson Davis by SCA's president John Hurry.

Statement of Claim ¶¶ 21, 23.

In order to fairly arbitrate its claims against Miller, SCA must be able to obtain documents and testimony from FINRA regarding two narrow issues: (1) FINRA's communications with Miller, and (2) the actions FINRA took in response to its communications with Miller.

Based on the foregoing facts, on February 5, 2018, the Arbitrators issued the Deposition Subpoena, which was duly served upon FINRA.

On February 20, 2018, FINRA served objections to the Deposition Subpoena.

On March 2, 2018, SCA filed and served a Motion to Compel FINRA's compliance with the Deposition Subpoena.

On March 20, 2018, FINRA filed and served an Opposition to SCA's Motion to Compel.

On March 23, 2018, SCA filed and served a Reply in support of its Motion to Compel.

## III.

## **LEGAL STANDARD**

FINRA Code of Arbitration Procedures for Industry Disputes, Rule 13512(a)(1) provides: "Arbitrators shall have the authority to issue subpoenas for the production of document or the appearance of witnesses." Arbitrators are granted broad discretion to issue subpoenas to non-parties based upon the circumstances. *Id.* at 13512(a)(2).

The Arbitrators' subpoena power is codified in the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"),[1] which provides:

---

[1] The FAA applies to all employment contracts outside the transportation field. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

-3-

> The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case

9 U.S.C. § 7.

"The plain text of the statute [9 U.S.C. § 7] allows an arbitrator to subpoena witnesses to appear at hearings before the arbitrator and to bring documents with them." *McTammany v. Found. Capital Partners L.P.*, 2015 WL 12781404, at *2 (C.D. Cal. May 1, 2015). According to the very case cited by FINRA in its objections to the Deposition Subpoena:

> "The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." Section 7 of the FAA provides an arbitrator authority to summon "any person to attend before them or any of them as a witness and in a proper case to bring with him or them" any material evidence in the case. **[T]he statute unambiguously gives an arbitrator authority to compel a non-party to provide document discovery during a hearing.**

*CVS Health Corp. v. Vividus LLC*, 2016 WL 3227160, at *2 (D. Ariz. June 13, 2016), *aff'd*, 878 F.3d 703 (9th Cir. 2017) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)).

## IV.

## ARGUMENT

The Arbitrators previously issued the Deposition Subpoena to FINRA. The reasons for the new subpoena are substantially similar to the reasons articulated by SCA in its motion requesting the Deposition Subpoena, namely: In order to fairly and expeditiously arbitrate its claims against Miller in a cost effective manner, SCA must be able to subpoena critical documents and testimony from FINRA.

SCA has alleged that Miller breached his NDAs and divulged confidential information to FINRA. Miller claims that he was just a whistleblower. SCA therefore must be allowed to review Miller's communications with FINRA and discover what actions FINRA took as a result

of Miller's actions. If SCA is not allowed to obtain this information from FINRA, it will be entirely dependent on Miller for this information, which would be highly prejudicial and unfair.

As an initial matter, Miller is unable to provide documents or testimony regarding the effect his communications had on FINRA. This information goes to the heart of SCA's damages, and can only be obtained from FINRA.

Second, Miller is an unreliable source of information. On February 28, 2017, SCA deposed Miller in an action currently pending between SCA and FINRA in U.S. District Court, District of Arizona, Case no. 14-cv-02490. Susman Decl. ¶ 2. At his deposition, Miller could not recall ever sending any email communications to FINRA. *Id.* at ¶ 3. Miller's memory was, to put it mildly, not reliable. When confronted with a stack of documents, Miller later admitted that he sent at least 16 emails to FINRA. *Id.* Miller therefore cannot be trusted to provide the information needed by SCA.

It would therefore be manifestly unfair to deny SCA the ability to obtain critical information from FINRA.

V.

**CONCLUSION**

For all of the reasons stated herein, if the Arbitrators decide not to compel FINRA's compliance with the Deposition Subpoena, they should issue the attached Subpoena to FINRA and allow SCA to obtain necessary information from FINRA at the time of trial.

DATED: March 23, 2018          HARDER LLP

By */s/ Jordan Susman*
Jordan Susman, Esq.
132 South Rodeo Drive, 4th Floor
Beverly Hills, CA 90212
424-203-1600
Attorneys for Claimant
SCOTTSDALE CAPITAL ADVISORS CORP.

# PROOF OF SERVICE

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 132 South Rodeo Drive, Fourth Floor, Beverly Hills, CA 90212.

On March 23, 2018, I served true copies of the following document(s) described as: **CLAIMANT SCOTTSDALE CAPITAL ADVISORS CORP.'S MOTION TO ISSUE SUBPOENA TO FINRA TO APPEAR AS WITNESS AND PRODUCE DOCUMENTS AT ARBITRATION** in the manner described below, on the interested parties in this action as follows:

| | |
|---|---|
| Glenn B. Hotchkiss<br>BUCHALTER<br>16435 North Scottsdale Road, Suite 440<br>Scottsdale, AZ 85254-1754<br>Tel: 310.451.5800<br>Email: ghotchkiss@buchalter.com<br><br>*Attorney(s) for Respondent* | |

[ ] **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed directly below and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Harder Mirell & Abrams LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

[X] **BY OVERNIGHT DELIVERY:** I enclosed said document(s) in an envelope or package provided by the overnight service carrier and addressed to the persons at the addresses listed directly below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight service carrier or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents.

[ ] **BY ELECTRONIC MAIL [Courtesy Copy by email]** I e-mailed the document(s) to the party(ies)' electronic mail address(es) as indicated below:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 23, 2018, at Beverly Hills, California.

By: */s/ Cayla Bergman*
Cayla Bergman

6

| | |
|---|---|
| 1 | Charles J. Harder (CA Bar No. 184593) |
| | Dilan A. Esper (CA Bar No. 178293) |
| 2 | Jordan Susman (CA Bar No. 246116) |
| | HARDER LLP |
| 3 | 132 S. Rodeo Drive, Fourth Floor |
| | Beverly Hills, California 90067 |
| 4 | Telephone: (424) 203-1600 |
| | E-mail: CHarder@harderllp.com |
| 5 | DEsper@harderllp.com |
| | JSusman@harderllp.com |
| 6 | |
| 7 | Attorneys for Claimant |
| | Scottsdale Capital Advisors Corp. |

FINANCIAL INDUSTRY REGULATORY AUTHORITY

SCOTTSDALE CAPITAL ADVISORS CORP., an Arizona corporation,

Claimant,

v.

ERIC MILLER, an individual,

Respondent.

Case no. 17-01765

**DECLARATION OF JORDAN SUSMAN IN SUPPORT OF CLAIMANT SCOTTSDALE CAPITAL ADVISORS CORP.'S MOTION TO ISSUE SUBPOENA TO FINRA TO APPEAR AS WITNESS AND PRODUCE DOCUMENTS AT ARBITRATION**

Arbitration Trial: May 7, 2018

I, Jordan Susman, declare:

1. I am an attorney duly licensed to practice law in the State of California and am an attorney at the law firm of Harder LLP ("HMA"), attorneys of record for Claimant Scottsdale Capital Advisors, Corp. ("SCA") in this arbitration. I have personal knowledge of the facts stated herein, and if called as a witness, I could and would competently testify thereto.

2. On February 28, 2017, I deposed Eric Miller on behalf of SCA in an action currently pending between SCA and FINRA in U.S. District Court, District of Arizona, Case no. 14-cv-02490.

3. At his deposition, Miller originally testified that he could not recall ever sending any email communications to FINRA. When confronted with email correspondence between himself and FINRA, Miller changed his testimony and admitted that he sent at least 16 emails to FINRA.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: March 23, 2018
PLACE: Beverly Hills, California

                                           */s/ Jordan Susman*
                                           JORDAN SUSMAN

# FINRA Office of Dispute Resolution

In the Matter of the Arbitration between

SCOTTSDALE CAPITAL ADVISORS, INC.

Case no. 1701765

VS.

ERIC MILLER

## SUBPOENA TO TESTIFY AT ARBITRATION AND TO PRODUCE DOCUMENTS

To: Financial Industry Regulatory Authority, Inc.
2338 W. Royal Palm Rd., Ste. J, Phoenix, AZ 85021

YOU ARE COMMANDED to appear in a FINRA Arbitration at the time, date, and place set forth below to testify at an arbitration. When you arrive, you must remain at the location until the Arbitrators allow you to leave. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the matters set forth in Attachment A.

PLACE: Regus, 6991 E Camelback Rd, Scottsdale, AZ 85251

DATE & TIME: May 8, 2018, 10:00 a.m.

You, or your representatives, must also bring with you the documents, electronically stored information, or objects set forth in Attachment B.

FINRA Code of Arbitration Procedures for Industry Disputes Rules 13512 and 13513 relating to subpoenas are attached hereto.

Date:_____

Signed:_____
Arbitrator(s)

Requested by: SCOTTSDALE CAPITAL ADVISORS, INC.

JORDAN SUSMAN, ESQ.
132 S. RODEO DRIVE, FOURTH FLOOR
BEVERLY HILLS, CA 90212
424-203-1600
JSUSMAN@HARDERLLP.COM

{00089759;1}

# EXHIBIT A

## DEFINITIONS

1. The terms YOU or YOUR refer to Financial Industry Regulatory Authority and all of YOUR agents, representatives, attorneys, and all other persons acting on behalf of any and all such persons.

2. The term SCOTTSDALE refers to Claimant Scottsdale Capital Advisors, Inc. and all of its agents, representatives, attorneys, and all other persons acting on behalf of any and all such persons

3. The term MILLER refers to Respondent Eric Miller and all of his agents, representatives, attorneys, and all other persons acting on behalf of any and all such persons.

4. The term COMMUNICATION(S) means any exchange of information by a method of transmission, including, without limitation, any meetings, conferences, face-to-face conversations, mails, electronic transmissions, electronic mail, telephone, facsimile, text message, telegram, telex or by any other medium, including written, taped or recorded (audio or video) communications of any kind.

5. The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all"; "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine or neuter form shall include each of the other genders.

6. "Relating to" or "relate(s) to" or "related to" means referring to, concerning, responding to, commenting on, regarding, discussing, showing, describing, reflecting, implying, analyzing, embodying, constituting, comprising, dealing with, responding to, or is in any way logically or factually connected with the subject matter.

## TOPICS

1. COMMUNICATIONS between YOU and MILLER relating to SCOTTSDALE.

2. All actions YOU took as a result of YOUR COMMUNICATIONS with MILLER relating to SCOTTSDALE.

# EXHIBIT B

## DEFINITIONS

1. The terms YOU, YOUR or FINRA refer to Financial Industry Regulatory Authority and all of YOUR agents, representatives, attorneys, and all other persons acting on behalf of any and all such persons.

2. The term SCOTTSDALE refers to Claimant Scottsdale Capital Advisors, Inc. and all of its agents, representatives, attorneys, and all other persons acting on behalf of any and all such persons

3. The term MILLER refers to Respondent Eric Miller and all of his agents, representatives, attorneys, and all other persons acting on behalf of any and all such persons.

4. The term COMMUNICATION(S) means any exchange of information by a method of transmission, including, without limitation, any meetings, conferences, face-to-face conversations, mails, electronic transmissions, electronic mail, telephone, facsimile, text message, telegram, telex or by any other medium, including written, taped or recorded (audio or video) communications of any kind.

5. The term DOCUMENT(S) includes all written materials, graphic matter, handwriting, typewriting, audio or video tape recordings, however produced or reproduced, of every kind and description, including but not limited to, the original and each copy thereof which is non-identical by reason of any mark, change, or other cause or reason whatsoever, of all correspondence, records, reports, memoranda, notes, telegrams, telexes, facsimiles, messages and message books, telephone logs, memoranda of telephone conversations, publications, books, brochures, booklets, manuals, flyers, leaflets, contracts, memoranda of agreement, books of account, ledgers, journals, working papers, records or summaries of personal interviews or conversations, appointment calendars, diaries, receipts, invoices, billing statements, microfilm, microfiche, files, tapes, magnetic tapes, discs, drives, data cards, films, data processing files and all other computer-readable records or programs, including any and all drafts or nonidentical copies thereof. DOCUMENTS in the form of any magnetic tapes, discs, drives (including without limitation external hard drives, internal hard drives, "flash drives," "thumb drives," "zip drives," "pen drives," "jump drives," and media sticks), DVDs, CDs, CD-ROMs, data cards, media cards, data processing files and other computer-readable records or programs must be produced in their native electronic format or other easily-readable and fully-searchable format approved by the Propounding Party, on a disc, drive, DVD or other easily-accessible and readable electronic medium. Any electronic spreadsheets should be produced in full with all columns, rows and other data fully opened and "unhidden." Any DOCUMENTS that are in color must be produced in the full color of the original document. All DOCUMENTS must be produced in their original size, i.e., oversized documents should be produced in their original size, and in a size that is fully legible so that all words, numbers, characters and symbols can be read clearly.

6. The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all"; "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine or neuter form shall include each of the other genders.

7. "Relating to" or "relate(s) to" or "related to" means referring to, concerning, responding to, commenting on, regarding, discussing, showing, describing, reflecting, implying, analyzing, embodying, constituting, comprising, dealing with, responding to, or is in any way logically or factually connected with the subject matter.

## DOCUMENT REQUESTS

1. All DOCUMENTS that relate to all COMMUNICATIONS between YOU and MILLER relating to SCOTTSDALE.

2. All DOCUMENTS that relate to all actions YOU took as a result of YOUR COMMUNICATIONS with MILLER.

# FINRA Code of Arbitration Procedures for Industry Disputes Rules 13512 and 13513

**13512. Subpoenas**

(a) To the fullest extent possible, parties should produce documents and make witnesses available to each other without the use of subpoenas.

(1) Arbitrators shall have the authority to issue subpoenas for the production of documents or the appearance of witnesses.

(2) Unless circumstances dictate the need for a subpoena, arbitrators shall not issue subpoenas to non-party FINRA members and/or employees or associated persons of non-party FINRA members at the request of FINRA members and/or employees or associated persons of FINRA members. If the arbitrators determine that the request for the appearance of witnesses or the production of documents should be granted, the arbitrators should order the appearance of such persons or the production of documents from such persons or non-party FINRA members under Rule 13513.

(b) A party may make a written motion requesting that an arbitrator issue a subpoena to a party or a non-party. The motion must include a draft subpoena and must be filed with the Director. The requesting party must serve the motion and draft subpoena on each other party. The requesting party may not serve the motion or draft subpoena on a non-party.

(c) If a party receiving a motion and draft subpoena objects to the scope or propriety of the subpoena, that party shall, within 10 calendar days of service of the motion, file written objections with the Director, and shall serve copies on all other parties. The party that requested the subpoena may respond to the objections within 10 calendar days of receipt of the objections. After considering all objections, the arbitrator responsible for deciding discovery-related motions shall rule promptly on the issuance and scope of the subpoena.

(d) If the arbitrator issues a subpoena, the party that requested the subpoena must serve the subpoena on all parties and, if applicable, on any non-party receiving the subpoena. The party must serve the subpoena on the non-party by first-class mail, overnight mail service, overnight delivery service, hand delivery, email or facsimile.

(e) If a non-party receiving a subpoena objects to the scope or propriety of the subpoena, the non-party may, within 10 calendar days of service of the subpoena, file written objections with the Director. The non-party may file the objection by first-class mail overnight mail service, overnight delivery service, hand delivery, email or facsimile. The Director shall forward a copy of the written objections to the arbitrator and all other parties. The party that requested the subpoena may respond to the objections within 10 calendar days of receipt of the objections. The party must serve the response on the non-party and file proof of service with the Director pursuant to Rule 13300(c)(4). After considering all objections, the arbitrator responsible for issuing the subpoena shall rule promptly on the objections.

(f) Any party that receives documents in response to a subpoena served on a non-party shall serve notice on all other parties within five days of receipt of the documents. Thereafter, any party may request copies of such documents and, if such a request is made, the documents

must be provided within 10 calendar days following receipt of the request by serving them by first-class mail, overnight mail service, overnight delivery service, hand delivery, email or facsimile. Parties must not file the documents with the Director.

(g) If the arbitrators issue a subpoena to a non-party FINRA member and/or any employee or associated person of a non-party FINRA member at the request of a FINRA member and/or employee or associated person of a FINRA member, the party requesting the subpoena shall pay the reasonable costs of the non-party's appearance and/or production, unless the panel directs otherwise.

**13513. Authority of Panel to Direct Appearances of Associated Person Witnesses and Production of Documents Without Subpoenas**

(a) Upon motion of a party, the panel may order the following without the use of subpoenas:

(1) The appearance of any employee or associated person of a member of FINRA; or

(2) The production of any documents in the possession or control of such persons or members.

(b) The motion must include a draft order and must be filed with the Director. The requesting party must serve the motion and draft order on each other party. The requesting party may not serve the motion or draft order on a non-party.

(c) If a party receiving a motion and draft order objects to the scope or propriety of the order, that party shall, within 10 calendar days of service of the motion, file written objections with the Director and shall serve copies on all other parties. The party that requested the order may respond to the objections within 10 calendar days of receipt of the objections. After considering all objections, the arbitrator responsible for deciding discovery-related motions shall rule promptly on the issuance and scope of the order.

(d) If the arbitrator issues an order, the party that requested the order must serve the order on all parties and, if applicable, on any non-party receiving the order. The party must serve the order on the non-party by first-class mail, overnight mail service, overnight delivery service, hand delivery, email or facsimile.

(e) If a non-party receiving an order objects to the scope or propriety of the order, the non-party may, within 10 calendar days of service of the order, file written objections with the Director. The non-party may file the objection by first-class mail, overnight mail service, overnight delivery service, hand delivery, email or facsimile. The Director shall forward a copy of the written objections to the arbitrator and all other parties. The party that requested the order may respond to the objections within 10 calendar days of receipt of the objections. The party must serve the response on the non-party and file proof of service with the Director pursuant to Rule 13300(c)(4). After considering all objections, the arbitrator responsible for issuing the order shall rule promptly on the objections.

(f) Any party that receives documents in response to an order served on a non-party shall serve notice to all other parties within five days of receipt of the documents. Thereafter, any party may request copies of such documents and, if such a request is made, the documents must

be provided within 10 calendar days following receipt of the request by first-class mail, overnight mail service, overnight delivery service, hand delivery, email or facsimile. Parties must not file the documents with the Director.

(g) Unless the panel directs otherwise, the party requesting the appearance of witnesses by, or the production of documents from, non-parties under this rule shall pay the reasonable costs of the appearance and/or production.