# Exhibit 7

1   Charles J. Harder  (CA Bar No. 184593)
    Dilan A. Esper (CA Bar No. 178293 )
2   Jordan Susman (CA Bar No. 246116)
    HARDER LLP
3   132 S. Rodeo Drive, Fourth Floor
    Beverly Hills, California 90067
4   Telephone:  (424) 203-1600
    E-mail:  CHarder@harderllp.com
5   DEsper@harderllp.com
    JSusman@harderllp.com
6
    Attorneys for Claimant
7   Scottsdale Capital Advisors Corp.

8                 FINANCIAL INDUSTRY REGULATORY AUTHORITY

9

10

11  SCOTTSDALE CAPITAL ADVISORS              Case no. 17-01765
    CORP., an Arizona corporation,

12                                           **CLAIMANT SCOTTSDALE CAPITAL
                Claimant,                     ADVISORS CORP.'S MOTION TO
13                                            COMPEL THIRD PARTY FINRA'S
          v.                                  COMPLIANCE WITH SUBPOENA**
14
    ERIC MILLER, an individual,              Arbitration Trial: May 7, 2018
15
                Respondent.
16

17

18

19

20

21

22

23

24

25

26

{00090751;1}

Claimant SCOTTSDALE CAPITAL ADVISORS CORP. ("**SCA**") submits the following Motion to Compel Compliance with Subpoena ("**Motion**") served upon third party FINRA.

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION & STATEMENT OF RELEVANT FACTS

This action arises from defendant Eric Miller's ("**Miller**") efforts to destroy SCA by illegally sharing confidential information and making false statements to FINRA and the press.[1] Among other things, "Miller encouraged FINRA to harass and intimidate SCA, and advised FINRA on ways to do it . . .  In addition, Miller encouraged FINRA to block a pending acquisition of another broker dealer named Wilson Davis by SCA's president John Hurry."[2]

The arbitration panel previously issued a subpoena to FINRA to produce documents and appear for deposition (the "**Deposition Subpoena**") prior to the arbitration hearing in this matter. FINRA, however, objected to the Deposition Subpoena, and the arbitration panel chose not compel FINRA's compliance with the Deposition Subpoena for two reasons: (1) it did not have authority to compel discovery from a third party outside of a hearing, and (2) the Arizona Arbitration Act does not apply to agreements between employers and employees.

On March 23, 2018, SCA filed an unopposed motion to issue a subpoena ("**Subpoena**") to FINRA that addressed the issues in the arbitration panel's order, namely: (1) the new Subpoena required FINRA to appear **at the hearing**, and (2) the new Subpoena was requested based upon the Federal Arbitration Act ("**FAA**") that applies to all employment contracts outside the transportation field. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

On April 4, 2018, the Arbitrators issued the Subpoena, which was then personally served upon FINRA.

Instead of complying with the Subpoena, on April 16, 2018, FINRA served objections to

---

[1] *See* Statement of Claim ¶¶ 21-24.

[2] Statement of Claim ¶ 23.

1    it.  FINRA's objections are baseless, and its compliance with the Subpoena should be compelled.

2         As an initial matter, FINRA does not claim that the discovery requested is too broad or

3    that compliance with the Subpoena would be burdensome.  Instead, FINRA has proffered a

4    handful of objections that are legally unsound and easily dispensed with.

5         **First**, FINRA's claim that it is not subject to personal jurisdiction in Arizona is false.  In

6    another lawsuit involving SCA, FINRA admitted: "**The Court has general personal**

7    **jurisdiction over FINRA** . . . as they conduct business in the State of Arizona on a substantial or

8    continuous and systematic basis, and, therefore, are constructively present in the State of

9    Arizona."

10        **Second**, to the extent FINRA already produced responsive documents to SCA in another

11   lawsuit, SCA does not require or seek duplicative documents.

12        **Third**, FINRA is not allowed to evade its obligation to comply with the Subpoena by

13   merely claiming "investigatory privilege."  In fact, the investigatory privilege is a **qualified**

14   privilege, and every single factor used by courts to analyze the privilege weighs in SCA's favor.

15   In particular, the information SCA seeks is not available through other discovery or from any

16   other source.  Only FINRA knows what actions it took as a result of its communications with

17   Miller.

18        In sum, the Arbitrators should see through FINRA's baseless objections and compel its

19   compliance with the Subpoena forthwith.

20                                                    **II.**

21                                          **LEGAL STANDARD**

22        FINRA Code of Arbitration Procedures for Industry Disputes, Rule 13512(a)(1) provides:

23   "Arbitrators shall have the authority to issue subpoenas for the production of document or the

24   appearance of witnesses."  Arbitrators are granted broad discretion to issue subpoenas to non-

25   parties based upon the circumstances. *Id.* at 13512(a)(2).

26

The Arbitrators' subpoena power is codified in the FAA, 9 U.S.C. § 1 *et seq.*,[3] which provides:

> The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case

9 U.S.C. § 7.

"The plain text of the statute [9 U.S.C. § 7] allows an arbitrator to subpoena witnesses to appear at hearings before the arbitrator and to bring documents with them." *McTammany v. Found. Capital Partners L.P.*, 2015 WL 12781404, at *2 (C.D. Cal. May 1, 2015).

> "The preeminent canon of statutory interpretation requires us to presume that the legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." Section 7 of the FAA provides an arbitrator authority to summon "any person to attend before them or any of them as a witness and in a proper case to bring with him or them" any material evidence in the case. **[T]he statute unambiguously gives an arbitrator authority to compel a non-party to provide document discovery during a hearing**.

*CVS Health Corp. v. Vividus LLC*, 2016 WL 3227160, at *2 (D. Ariz. June 13, 2016), *aff'd*, 878 F.3d 703 (9th Cir. 2017) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)).

### III.

### ARGUMENT

**A.    FINRA Previously Admitted it is Subject to General Jurisdiction in Arizona**

In its objections, FINRA admits that it is registered to do business in Arizona, thereby exposing the lie in its earlier objections to the Deposition Subpoena that it "has no presence in Arizona." Instead of addressing its earlier false statement, FINRA doubles down on its

---

[3] The FAA applies to all employment contracts outside the transportation field. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

1   falsehoods, claiming it is not subject to general jurisdiction in Arizona.  *See* FINRA Objections,

2   p.3 ("Here, neither specific nor general jurisdiction exists.").  This is patently false.  In *Hurry et*

3   *al. v. FINRA*, No. 14-cv-02490 (the "**Hurry Matter**") , FINRA admitted: "**The Court has**

4   **general personal jurisdiction over FINRA . . . as they conduct business in the State of**

5   **Arizona on a substantial or continuous and systematic basis, and, therefore, are**

6   **constructively present in the State of Arizona.**"  *See* Second Amended Complaint in Hurry

7   Matter, ¶ 48 (Exhibit 1 hereto); *see also* FINRA Answer to Second Amended Complaint in the

8   Hurry Matter, ¶ 48 (Exhibit 2 hereto).

9          Notwithstanding FINRA's brazen dishonesty, it is admittedly subject to general

10  jurisdiction in Arizona and must comply with the Subpoena.

11         **B.      SCA Does Not Seek Production of Redundant Documents**

12         FINRA's first argument—that it has already produced responsive communications[4]—is

13  easily dispensed with, because SCA does not seek the production of redundant documents.

14  FINRA must, however, produce non-redacted versions of its communications with Miller, as the

15  documents previously produced are littered with redactions that make it difficult to determine

16  who is speaking with whom.  Because those redactions were made in an effort to hide Miller's

17  identity, and Miller later authenticated the communications, there is no reason to maintain the

18  redactions.

19         **C.      FINRA Must Produce Internal Documents**

20         FINRA's second objection—that it will not produce any documents regarding the actions

21  it took in response to Miller's communications—is baseless, and the cases FINRA cites do not

22  allow it to evade compliance with the Subpoena.

23         **1.      The Information Requested is Relevant to SCA's Claims**

24         SCA is entitled to discovery "regarding any nonprivileged matter that is relevant to any

25

26  _____
    [4] This argument apparently only concerns Document Request 1, which seeks all communication between FINRA and
    respondent Eric Miller concerning SCA.

1    party's claim or defense."  Fed. Rule of Civ. Proc. 26(b)(1).

2         SCA's Statement of Claim alleges:

3              Miller encouraged FINRA to harass and intimidate SCA, and
4              advised FINRA on ways to do it, such as suggesting that FINRA
               review the text messages of SCA's employees and telling FINRA
5              that it should promptly press forward with regulatory proceedings
               against SCA. In addition, Miller encouraged FINRA to block a
6              pending acquisition of another broker dealer named Wilson Davis
               by SCA's president John Hurry.[5]
7

8         The actions FINRA took in response to communications from Miller are undoubtedly

9    relevant to the subject matter of this action, and FINRA cannot hide behind the so-called

10   "investigatory privilege" to cloak Miller's (and perhaps its own) wrongdoing.

11        **2.    The "Investigatory Privilege" is a Qualified Privilege and Every Factor**

12             **Weighs in Favor of Compelling FINRA's Compliance**

13        The so-called "investigatory privilege" cited by FINRA is not a blanket privilege that

14   prevents its compliance with the Subpoena, but a "**qualified** common law privilege."  *In re Adler,*

15   *Coleman, Clearing Corp.*, 1999 WL 1747410, at *5 (S.D.N.Y. Dec. 8, 1999) (emphasis added).

16   "The privilege serves to preserve the integrity of law enforcement techniques and confidential

17   sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of

18   individuals under investigation and to prevent interference with the investigation." *Raphael v.*

19   *Aetna Cas. & Sur. Co.*, 744 F. Supp. 71, 74 (S.D.N.Y. 1990).  According to the primary case

20   cited by FINRA, the investigatory privilege does **not** protect "factual or statistical data", and it

21   only protects "analyses or opinions drawn from such material" to the extent such information is

22   not central to a party's claim and/or not available from another source. *Ross v. Bolton*, 106

23   F.R.D. 22, 24-25 (S.D.N.Y. 1985).

24        Because it is a qualified privilege, courts are guided by several factors in deciding whether

25

26   _____
     [5] Statement of Claim ¶ 23.

to overcome the privilege:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources: (10) the importance of the information sought to the plaintiff's case.

*In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988).

Of these factors, some weigh more heavily than others. In particular, "The litigants' need is particularly strong where the litigant has no other means of obtaining the information." *Raphael*, 744 F. Supp. at 75. Moreover, numerous cases have held that the privilege only applies to ongoing or anticipated investigations—not completed investigations. *See e.g.*, *In re Adler*, 1999 WL 1747410 at *5; *DGM Investments, Inc. v. New York Futures Exch., Inc.*, 224 F.R.D. 133, 142 (S.D.N.Y. 2004). A review of the foregoing factors demonstrates that each one weighs in favor of compelling FINRA's compliance with the Subpoena.

First, FINRA's disclosure of requested information will not discourage citizens from giving the government information.

Second, Miller's identity has already been disclosed.

Third, FINRA's disclosure of steps it took in response to Miller's communications will not chill any self-evaluation or program improvement. On the contrary, disclosure will likely assist FINRA in evaluating and improving its services, and prevent FINRA from being a pawn in

1  a third party's retaliatory scheme.

2      Fourth, the information sought by the Subpoena is primarily factual, namely: the actions

3  FINRA took in response to Miller's communications.

4      Fifth, SCA is not an actual or potential defendant in any criminal proceeding either

5  pending or reasonably likely to follow from the incidents in question.  Miller's communications

6  with FINRA began **five years ago**.  Any investigation or proceeding against SCA that occurred

7  as a result thereof was completed long ago.

8      Six, SCA's action is non-frivolous and was brought in good faith.  In fact, Miller has

9  already admitted that he encouraged FINRA to harass SCA.

10     Seven, the information sought is not available through other discovery or from other

11 sources.  Only FINRA knows what actions it took as a result of its communications with Miller.

12     Eight, the discovery SCA seeks from FINRA is critical to understanding whether FINRA

13 harassed and intimidated SCA as a result of Miller's encouragement, and whether FINRA took

14 steps to block John Hurry's acquisition of Wilson Davis, per Miller's request.

15     In sum, **every single factor used by courts to evaluate a claim of "investigatory**

16 **privilege" weighs in favor of compelling FINRA's compliance with the Subpoena**.

17     Finally, to the extent FINRA has concerns regarding alleged privileged information, the

18 parties have already submitted a protective order to the Arbitrators.  The protective order will

19 prevent public access to the discovery and alleviate any genuine concerns FINRA may have.

20                                    **IV.**

21                              **CONCLUSION**

22     The Subpoena seeks discovery that is essential for SCA to arbitrate its claims against

23 Miller.  Absent FINRA's compliance with the Subpoena, SCA will be irreparably prejudiced at

24 arbitration.  Accordingly, SCA respectfully requests that the Arbitrators compel FINRA's

25 compliance.

26

1    DATED: April 25, 2018           HARDER LLP

2

                                       By   */s/ Jordan Susman*

3                                            Jordan Susman, Esq.
                                           132 South Rodeo Drive, 4th Floor

4                                            Beverly Hills, CA 90212
                                           424-203-1600

5                                            Attorneys for Claimant
                                           SCOTTSDALE CAPITAL ADVISORS CORP.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## PROOF OF SERVICE

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 132 South Rodeo Drive, Fourth Floor, Beverly Hills, CA 90212.

On April 25, 2018, I served true copies of the following document(s) described as: **CLAIMANT SCOTTSDALE CAPITAL ADVISORS CORP.'S MOTION TO COMPEL THIRD PARTY FINRA'S COMPLIANCE WITH SUBPOENA** in the manner described below, on the interested parties in this action as follows:

| | | |
|---|---|---|
| Glenn B. Hotchkiss<br>BUCHALTER<br>16435 North Scottsdale Road, Ste. 440<br>Scottsdale, AZ 85254-1754<br>Tel:    310.451.5800<br>Email: ghotchkiss@buchalter.com<br>*Attorney(s) for Respondent* | Richard Berry<br>Executive Vice President and<br>Director<br>FINRA Office of Dispute Resolution<br>165 Broadway<br>New York, NY 10006<br>Email: Richard.Berry@finra.org | Terri L. Reicher<br>Associate Vice President<br>Associate General Counsel<br>1735 K Street, NW<br>Washington, DC 20006<br>Email:<br>terri.reicher@finra.org |

**[X]     BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed directly below and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Harder Mirell & Abrams LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**[ ]     BY OVERNIGHT DELIVERY:** I enclosed said document(s) in an envelope or package provided by the overnight service carrier and addressed to the persons at the addresses listed directly below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight service carrier or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents.

**[ X ]     BY ELECTRONIC MAIL [Courtesy Copy by email]** I e-mailed the document(s) to the party(ies)' electronic mail address(es) as indicated above.

**[ ]     BY HAND DELIVERY:** I caused the document(s) to be hand-delivered via messenger to the party(ies) at their known addresses as listed below.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 25, 2018, at Beverly Hills, California.

By: _____/s/ Cayla Bergman_____
Cayla Bergman

{00090751;1}                              -10-