Charles J. Harder (*pro hac vice* to be filed)
Dilan A. Esper (*pro hac vice* to be filed)
Jordan Susman (*pro hac vice* to be filed)
HARDER LLP.
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90067
Telephone: (424) 203-1600
E-mail: CHarder@harderllp.com
   DEsper@harderllp.com
   JSusman@harderllp.com

Attorneys for Petitioner Scottsdale Capital Advisors, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| *In re Matter of:* | Case No. MC-18-00035-PHX-GMS |
| Scottsdale Capital Advisors, Inc. an Arizona corporation, | **REPLY OF SCOTTSDALE CAPITAL ADVISORS, INC. IN SUPPORT OF MOTION TO ENFORCE SUBPOENA IN ARBITRATION & REQUEST FOR CONTEMPT SANCTIONS** |
| Claimant, v. | |
| Eric Miller, Respondent. | |
| FINRA Arbitration no.: 17-01765 | |
| Scottsdale Capital Advisors, Inc. an Arizona corporation, | |
| Petitioner, v. | |
| Financial Industry Regulatory Authority, Inc., Respondent. | |

{00093039;3}

4813-5331-3371

## I. INTRODUCTION

For months FINRA has resisted SCA's requests that it testify and provide documents in the Arizona Arbitration. FINRA's excuses for its noncompliance have been a moving target.[1] For example, when SCA first attempted to subpoena FINRA, FINRA claimed that it has no presence in Arizona. FINRA's allegation was, of course, false: the Arizona Arbitration is a *FINRA arbitration*, and both FINRA *and* FINRA Regulation, Inc. are registered business entities in Arizona with offices in Phoenix. (Request for Judicial Notice ("RJN") 1, 2).

Notwithstanding FINRA's gamesmanship, including its repeated refusal to meet and confer with SCA regarding the Subpoena, the Court should order FINRA's compliance with the Subpoena and the Arizona Arbitration Panel's orders related thereto.

First, per 9 U.S.C. § 7, the Court should adopt and enforce the Arizona Arbitration Panel's orders.

Second, the Arizona Arbitration Panel and the Court have general jurisdiction over FINRA because FINRA is registered to do business in Arizona, and FINRA previously admitted that it is subject to general jurisdiction in Arizona.

Third, the Arizona Arbitration Panel and the Court have specific jurisdiction over FINRA because the Subpoena and related orders arise directly from FINRA's activities in Arizona.

Fourth, the Subpoena and related orders comply with Federal Rule of Civil Procedure ("FRCP") 45, because "numerous courts have compelled compliance with a subpoena duces tecum that required the production of documents more than 100 miles from where the recipient resided, worked, or regularly transacted business." *Sol v. Whiting*, No. CV-10-01061-PHX-SRB, 2014 WL 12526314, at *2 (D. Ariz. July 22, 2014). Moreover, the Federal Arbitration Act ("FAA") is broader than the federal rules, and the "the territorial limits of personal jurisdiction do not apply to the enforcement of a

---

[1] This Reply Brief is, in fact, necessary to address arguments that FINRA raised for the first time in its Opposition brief.

subpoena for documents under the FAA." *Festus & Helen Stacy Found., Inc. v. Merrill Lynch, Pierce Fenner, & Smith Inc.*, 432 F. Supp. 2d 1375, 1378 (N.D. Ga. 2006)).

Finally, although the Arizona Arbitration Panel ordered FINRA to appear and testify in Phoenix, SCA previously expressed its willingness to allow FINRA to testify from a location of FINRA's choosing, including Washington, DC or New York, which SCA reaffirms here again (and would have told FINRA if it responded to any of SCA's meet and confer letters).

In sum, the Court should compel FINRA's compliance with the Subpoena and related orders, and allow the Arizona Arbitration to proceed.

## II.   ARGUMENT

### A.   The Court Should Adopt The Arbitration Panel's Orders and Findings Concerning The Subpoena

"[U]nder the Arbitration Act, the arbitrators may order and conduct such discovery as they find necessary." *Stanton v. Paine Webber Jackson & Curtis, Inc.*, 685 F. Supp. 1241, 1242–43 (S.D. Fla. 1988); *Mississippi Power Co. v. Peabody Coal Co.*, 69 F.R.D. 558 (S.D. Miss. 1976) (an arbitrator, in its discretion, may permit and supervise discovery it deems necessary); *see also* 9 U.S.C. § 7 (arbitrators may issue summons to bring witnesses and documents before them).

The relevance of the information and the appropriateness of a subpoena should be determined in the first instance by the arbitrator. *Am. Fed'n of Television & Radio Artists, AFL-CIO v. WJBK-TV (New World Commc'ns of Detroit, Inc.)*, 164 F.3d 1004, 1010 (6th Cir. 1999). It would be inconsistent with the well-recognized federal policy favoring arbitration, and it would compromise the arbitration panel's expertise in the matter at hand to saddle the district court with these determinations. *In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 871 (8th Cir. 2000).

"[C]ourts play only a limited role when asked to review the decision of an arbitrator." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36, 108 S. Ct. 364, 370, 98 L. Ed. 2d 286 (1987). In *Wilkes–Barre Pub. Co. v. Newspaper*

*Guild of Wilkes-Barre, Local 120*, 559 F. Supp. 875, 882 (M.D. Pa. 1982)*,* where the arbitrator expressly noted that it had made no evaluation of the relevance of the subpoenaed information, the district court declined to do so as well stating that "[i]t is not the function of this court to determine what an arbitrator would or should find relevant in resolving a dispute."  Similarly, in *Meadows Indem. Co. Ltd. v. Nutmeg Ins. Co.,* 157 F.R.D. 42, 44 (M.D. Tenn. 1994), the court noted that the arbitration panel had determined the documents were relevant to the proceedings and refused to "second guess" that conclusion.  Moreover, in *National Post Office Mailhandlers v. United States Postal Serv.,* 751 F.2d 834, 841 (6th Cir. 1985), the court held that "when interpretation of a term in a collective bargaining agreement such as 'just cause' is at issue . . . an arbitrator's judgment as to whether evidence is or is not relevant is part of the bargain, and a court's power to disturb such discretionary determinations is quite limited."  As such, this Court should adopt the Arizona Arbitration Panel's orders or findings with respect to the Subpoena, including:

- The panel has jurisdiction over FINRA (Dkt. 1-3) (May 1, 2018 Order, para. 1);
- Documents reflecting communications between Eric Miller and FINRA that redacted Miller's name and that have been authenticated by Miller must be produced immediately and may be entered into evidence in the hearing of the arbitration, if otherwise admissible (*id.*) (para. 3);
- FINRA must designate a witness to testify regarding communications between FINRA and Eric Miller relating to SCA (Dkt. 1-8) (May 8, 2018 Order, p. 4)
- Within a reasonable time, SCA and FINRA shall set a date and location for the receipt of FINRA's witness testimony in the Phoenix metro area (*id*.).

**B.    FINRA Is Subject To General Jurisdiction**

In its Opposition, FINRA proffered a series of arguments, some for the first time, that do not withstand scrutiny.  FINRA first contends that the Court should deny the motion because the Court allegedly lacks personal jurisdiction over FINRA.  FINRA's contention is unmeritorious.

{00093039;3}

### 1. There Is General Jurisdiction Over FINRA Because It Is Registered To Do Business There

"Traditionally, a court has general personal jurisdiction of a defendant if the defendant either is present in the State, has consented to such jurisdiction or the defendant has sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Bohreer v. Erie Ins. Exchange*, 216 Ariz. 208, 213 (2007). FINRA has consented to general jurisdiction in Arizona.

Consent is a traditional basis for assertion of jurisdiction long upheld as constitutional. *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991) (citing *Hess v. Pawloski*, 274 U.S. 352, 356–57, 47 S.Ct. 632, 633, 71 L.Ed. 1091 (1927)). "A defendant may voluntarily consent or submit to the jurisdiction of a court which otherwise would not have jurisdiction over it." *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir. 1990). "One of the most solidly established ways of giving such consent is to designate an agent for service of process within the State." *Id.*; *Dehne v. Hillman Inv. Co.*, 110 F.2d 456, 458 (3d Cir. 1940) ("by applying for a certificate of authority and designating the Secretary of the Commonwealth as its attorney for process, the [defendant, a Delaware corporation] . . . must therefore be held to have consented to be sued in" federal court in Pennsylvania).

Foreign corporations authorized to transact business in Arizona are required to maintain in Arizona a known place of business and a statutory agent. *See* A.R.S. §10-1507. FINRA is registered to do business as a foreign corporation with the Arizona Corporation Commission and appointed a statutory agent in the state of Arizona. RJN, 1. FINRA is registered to conduct business as follows: "Securities industry regulation – overseeing securities firms." *Id*. Moreover, FINRA is "Active" and "In Good Standing" with the Arizona Corporation Commission, with an "Entity Known Place of Business" located at 2338 W. Royal Palm Rd., Suite J, Phoenix, AZ 85021, in Maricopa County. *Id*. By registering to do business in Arizona, FINRA "'purposefully avail[ed] itself of the

{00093039;3}

- 5 -

4813-5331-3371

privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Bane*, 925 F.2d at 640 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). By appointing an agent for service of process to do business in a state, FINRA expressly consented to general personal jurisdiction without any need for a minimum contacts analysis. *Bohreer*, 216 Ariz. at 214.

In *Bohreer,* the Arizona court recognized that some courts have held that a minimum contacts analysis is necessary even when a foreign corporation appoints an agent in the state for service of process so as to be authorized to do business in that state, but wisely explained that "**the better line of cases hold that consent is sufficient by itself**." *Bohreer*, 216 Ariz. at 216 (emphasis added).[2] *Bohreer* continues: "[T]he Supreme Court has made absolutely clear that appointment of an agent for service of process pursuant to permission to do business in a state by itself confers jurisdiction over the out-of-state defendant without offending due process." *Id.* at 214 (citing *Pennsylvania Fire Ins. Co.*, 243 U.S. 93, 94, 37 S.Ct. 344, 61 L.Ed. 610 (1917)). "[L]ater Supreme Court decisions are in accord with *Pennsylvania Fire*." *Id*. (citing *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939) and *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-05, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)).

"Express consent to jurisdiction through appointment of an agent without other contacts seems to be both the modern rule and supported by the Restatement (Second) of Conflicts of Law § 44 (1971) ("Restatement")." *Id*. at 215. According to the leading

---

[2] Another Arizona court, in *Wal-Mart Stores, Inc. v. LaMaire*, 242 Ariz. 357 (2017), adopted this flawed approach and imposed a minimum contacts requirement when a plaintiff sued Wal-Mart in Arizona for a slip and fall that occurred in one of its stores in Oregon. The court in *Wal-Mart* sidestepped *Bohreer* by interpreting *Bohreer* narrowly to apply to foreign corporations registered under A.R.S. §20-221 (as opposed to A.R.S. §§10-501 to 1510, like Wal-Mart). In doing so, *Wal-Mart* overlooked the well-reasoned analysis and authorities discussed in *Bohreer*. The analysis and authorities set forth in *Bohreer*, however, are the "better line" of reasoning and should be applied to this case.

{00093039;3}

treatise on national corporation law, Fletcher Cyclopedia Corporations: "[T]he modern rule is that a foreign corporation which, as a condition of doing business within the state, appoints an agent upon whom service of process may be made, has thereby given effective consent to be used not only in the state courts of that state, but in the federal courts as well." 18 Fletcher Cyc. Corp. § 8641 (Perm. Ed.).

Because FINRA is registered to do business in Arizona, appointed an agent in the state, and has a "known place of business" in Phoenix, FINRA is subject to general jurisdiction in Arizona.

### 2. FINRA Admitted It Is Subject To General Jurisdiction In Arizona

FINRA has also **admitted** that this Court has general personal jurisdiction over FINRA. In the Hurry Action in this Court, FINRA stated "FINRA…admit[s] that this Court has jurisdiction over the parties" in response to the following allegation: "The Court has general jurisdiction over FINRA and the Individual Defendants as they conduct business in the State of Arizona on a substantial or continuous and systematic basis, and, therefore, are constructively present in the State of Arizona." *See* Dkt. 1-1, 1-2. FINRA's prior admission is admissible to prove that this Court has general personal jurisdiction over FINRA, and that FINRA has admitted so much in a related lawsuit involving FINRA and SCA.[3] F.R.E. Rule 801(d)(2).

### C. There Is Specific Jurisdiction Over FINRA

---

[3] FINRA admits in its Response that the claims in the Hurry Action arose out of FINRA's onsite investigation of SCA in Scottsdale, Arizona. *See* Dkt. 5 at 5:11-18 ("Personal jurisdiction over FINRA in the Hurry Action …was based on specific personal jurisdiction because the claims at issue in that case arose out of FINRA's on-site investigation of a FINRA member [SCA] in Scottsdale, Arizona"), quoting Plaintiff's Motion to Enforce Subpoena, (Dkt. 1-1 at ¶72) ("On the morning of November 12, 202, staff members representing FINRA's Departments of Member Regulation and Enforcement commences FINRA Matter No. 20120327319 with a surprise onsite examination of SCA at its headquarters in Suite 6 of the Scottsdale Professional Plaza.").

{00093039;3}

1  FINRA contends that SCA has waived the argument that this Court has specific
2  jurisdiction over FINRA, and that there is no specific jurisdiction over FINRA. FINRA's
3  arguments are unmeritorious.
4  SCA has not waived this argument. The case cited by FINRA, *Nisqually Indian*
5  *Tribe v. Gregoire*, 623 F.3d 923, 928 n. 6 (9th Cir. 2010), dealt with an appellant's failure
6  to present an argument in an opening brief on appeal, which is not applicable here.
7  Further, SCA's motion argued that the arbitration panel held that it had jurisdiction over
8  FINRA and that FINRA admitted that it is subject to general personal jurisdiction in
9  Arizona.  As such, the motion presented the issue of jurisdiction and FINRA has had full
10 and fair opportunity to present its opposing arguments on that issue.
11 Moreover, there is specific jurisdiction over FINRA.  Specific jurisdiction is
12 analyzed under a three-prong test:  (1) The non-resident defendant must purposefully
13 direct its activities or consummate some transaction with the forum or resident thereof; or
14 perform some act by which he purposefully avails itself of the privilege of conducting
15 activities in the forum, thereby invoking the benefits and protections of its laws; (2) the
16 claim must be one which arises out of or relates to the defendant's forum-related
17 activities; and (3) the exercise of jurisdiction must comport with fair play and substantial
18 justice, i.e., it must be reasonable. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d
19 1066, 1076 (9th Cir. 2011).
20 If SCA satisfies the first two prongs, the burden then shifts to FINRA to set forth a
21 "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*
22 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–78, 105 S.Ct. 2174, 85
23 L.Ed.2d 528 (1985)).
24 First, FINRA has directed activities toward Arizona and availed itself of the
25 benefits afforded by Arizona's law.  As stated above, by registering to do business in
26 Arizona, FINRA "'purposefully avail[ed] itself of the privilege of conducting activities
27 within the forum State, thus invoking the benefits and protections of its laws.'" *Bane*, 925
28 F.2d at 640 (citing *Burger King Corp.,* 471 U.S. at 475).  FINRA has appointed a statutory

{00093039;3}

- 8 -

4813-5331-3371

1  agent in Arizona, and maintains a "Known Place of Business" address in Arizona.  RJN,
2  1.  As part of the business it conducts in Arizona, FINRA oversees 29 broker-dealer firms
3  which are headquartered in Arizona, (Dkt. 5-1 at ¶ 8), and arbitrates disputes in Arizona.

   Second, the claims in this matter arise out and relate to FINRA's forum-related activities.  The Arizona Arbitration concerns SCA's claims against Eric Miller, a former employee in Phoenix, who illegally shared confidential information, made false statements to FINRA, encouraged FINRA to harass and intimidate SCA, and encouraged FINRA to block a pending acquisition of another broker dealer by SCA's president John Hurry—all of which FINRA did.  (*See* Dkt. 1-7).  The Subpoena and related orders require FINRA to produce documents and provide testimony regarding its communications with Miller.  (Dkt. 1-3, 1-8).

   Third, FINRA has failed to make a compelling case that the exercise of jurisdiction would be unreasonable.  In determining whether the exercise of jurisdiction comports with "fair play and substantial justice" and is therefore reasonable, seven factors are considered:  (1) the extent of the defendant's purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *CollegeSource*, 653 F.3d at 1079.

   These factors weigh heavily in favor of asserting specific jurisdiction because: (1) FINRA purposefully injected itself into Arizona's affairs by registering to conduct business in this state, maintaining a statutory agent, business address, arbitration venue and overseeing 29 broker-dealers firms headquartered in Arizona; as well as communicating and aiding and abetting the tortious conduct and breaches of Eric Miller, who is a resident of Arizona; (2) it not unduly burdensome for FINRA to appear or produce documents, particularly because SCA is willing to examine FINRA by videoconference so as to not require a FINRA representative to travel to Arizona; (3) there

{00093039;3}

4813-5331-3371

is no conflict with the sovereignty of Delaware or New York (where FINRA claims that it is incorporated and headquartered); (4) and (6) Arizona has an interest in adjudicating this dispute and protect the interest of SCA, which is an Arizona company and citizen; (5) it would be most efficient for this Court to resolve SCA's motion and to adopt the Arizona Arbitration Panel's orders in the process; and (7) under Section 7 of the FAA, *supra*, the district court where the arbitrators are sitting has jurisdiction to compel compliance with the Subpoena, such that SCA has no alternative forum to seek this relief.[4]

### D. The Subpoena Complies With Federal Rule of Civil Procedure 45

FINRA contends that the Subpoena does not comply with the territorial limitations in Federal Rule of Civil Procedure ("FRCP") 45. FINRA is wrong.

First, "numerous courts have compelled compliance with a subpoena duces tecum that required the production of documents more than 100 miles from where the recipient resided, worked, or regularly transacted business." *Sol*, 2014 WL 12526314, at *2 (citing *Walker v. Ctr. for Food Safety*, 667 F. Supp. 2d 133, 138 (D.D.C. 2009); *Jett v. Penner*, No. S02-2036 GEBJFMP, 2007 WL 127790, at *2 (E.D. Cal. Jan. 12, 2007)); *see also Hay Group, Inc. v. EBS Acquisition Corp.*, 360 F.3d 404, 412 (3d Cir. 2004).

Second, FRCP 45's geographic limits apply only to subpoenas issued by district courts and that a district court has power to enforce to enforce an arbitrator's non-party subpoenas for discovery from non-parties located in other states. *Festus & Helen Stacy Found., Inc. v. Merrill Lynch, Pierce Fenner, & Smith Inc.*, 432 F. Supp. 2d 1375, 1378 (N.D. Ga. 2006) ("the territorial limits of personal jurisdiction do not apply to the enforcement of a subpoena for documents under the FAA"); *SchlumbergerSema, Inc. v. Xcel Energy, Inc.,* 2004 WL 67647, *3 (D. Minn. 2004) (District of Minnesota ordered

---

[4] Denying SCA's motion would create the absurd result that FAA, Section 7 authorizes issuance of some subpoenas that cannot be enforced. If the Court is inclined to deny the motion, SCA respectfully requests that the Court instead adopt the compromise approach created in *Amgen, Inc. v. Kidney Center of Delaware County*, 879 F. Supp. 878, 882-883 (N.D. Ill. 1995), where the district court enforced an arbitration subpoena against a distant non-party by permitting an attorney for a party in the arbitration to issue a subpoena that would be enforced by the district court in the district where the non-party resided.

{00093039;3}

production in New York pursuant to subpoena issued from arbitration proceedings in Minnesota). "The jurisdiction conferred by the FAA is broader than jurisdiction based upon the Federal Rules." *Festus & Helen Stacy Found.*, 432 F. Supp. 2d at 1378. Accordingly, this Court has authority to order FINRA to appear and produce documents. Moreover, SCA is willing to examine FINRA by videoconference, such that the FINRA representative would not have to travel to Arizona to testify.

### E. The Arbitration Panel Is Authorized To Order FINRA to Produce Documents Before the Hearing

FINRA contends that the arbitration panel cannot order it to produce documents outside of a hearing. However, "implicit in an arbitration panel's power to subpoena relevant documents for production at a hearing is the power to order the production of relevant documents for review by a party prior to the hearing." *In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 870–71 (8th Cir. 2000). Several courts have held that the FAA impliedly permits the arbitration panel to order document discovery and witnesses to appear prior to a hearing. *See e.g., In re Sec. Life Ins. Co. of Am.*, 228 F.3d at 871; *Stanton v. Paine Webber Jackson & Curtis, Inc.*, 685 F. Supp. 1241, 1242 (S.D. Fla. 1988). Accordingly, the Arizona Arbitration Panel has authority to order FINRA to produce documents before or separate from appearing to testify at the arbitration hearing.

### III. CONCLUSION

SCA respectfully requests that the Court enforce the Subpoena and related orders and allow the Arizona Arbitration to proceed.

DATED this 28th day of June 2018.

HARDER LLP

By: /s/ Jordan Susman
Charles J. Harder
Dilan A. Esper
Jordan Susman
HARDER LLP
132 S. Rodeo Drive, Fourth Floor
Beverly Hills, California 90212
Attorneys for Petitioner

{00093039;3}

- 11 -

4813-5331-3371